UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RITA M. AMUNRUD CLARK,                )
                                       )     No. CV-09-120-JPH
            Plaintiff,                 )
                                       )
                                       )
v.                                     )     ORDER GRANTING PLAINTIFF'S
                                       )     MOTION FOR SUMMARY
                                       )     JUDGMENT AND REMANDING FOR
MICHAEL J. ASTRUE,                     )     FURTHER PROCEEDINGS
Commissioner of Social Security,       )
                                       )
            Defendant.                 )
                                       )
                                       )
_____ )

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 9, 13.)  Attorney

Gary R. Penar represents plaintiff; Special Assistant United States Attorney Terrye E. Shea represents

defendant.   The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 4.)  After

reviewing the administrative record and briefs filed by the parties, the court **DENIES**  defendant's

Motion for Summary Judgment and **GRANTS** plaintiff's Motion for Summary Judgment.

## JURISDICTION

        Plaintiff Rita M. Amunrud Clark (plaintiff) filed for supplemental security income (SSI) on May

11, 2006.  (Tr. 22, 46-47 .)  Plaintiff alleged an onset date of December 1, 2000. (Tr. 80.)  Benefits were

denied  initially  and  on  reconsideration.    (Tr.  52,  58.)    Plaintiff  requested  a  hearing  before  an

administrative law judge (ALJ), which was held before ALJ Paul Gaughen on April 3, 2008.  (Tr. 22-45.)

Plaintiff was represented by counsel and testified at the hearing.  (Tr. 26-39.)  Vocational expert Ann

Austom also testified.  (Tr. 39-42.)    The ALJ denied benefits (Tr. 10-19) and the Appeals Council

denied review.  (Tr. 1.)  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 55 years old at the time of the hearing. (Tr. 24.) She left school in the seventh grade but later obtained a GED . At the time of the hearing, Plaintiff was a junior in college and was pursuing a degree in psychology. (Tr. 26.) Plaintiff previously worked as a caregiver in an adult home and as a circulating process inspector in production technology. (Tr. 87.) Plaintiff testified that she has Ehlers-Danlos syndrome, a connective tissue disorder. (Tr. 29.) She testified that she frequently sprains different parts of her body, that she always has pain, and that her lower back pain is constant. (Tr. 29-31.) Plaintiff also testified that mental and emotional problems prevent her from working. (Tr. 27.) Plaintiff has a history of substance abuse, but testified that she has only used drugs as prescribed since 2000, except for a suicide attempt in 2001. (Tr. 33.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -2

1    It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402

2    U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its

3    judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

4    (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the

5    proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v.*

6    *Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial

7    evidence to support the administrative findings, or if there is conflicting evidence that will support a

8    finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v.*

9    *Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

10                                   **SEQUENTIAL PROCESS**

11    The Social Security Act (the "Act") defines "disability" as the "inability to engage in any

12    substantial gainful activity by reason of any medically determinable physical or mental impairment which

13    can be expected to result in death or which has lasted or can be expected to last for a continuous period

14    of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A).  The Act also provides

15    that a plaintiff shall be determined to be under a disability only if his impairments are of such severity

16    that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education

17    and work experiences, engage in any other substantial gainful work which exists in the national economy.

18    42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical

19    and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

20    The Commissioner has established a five-step sequential evaluation process for determining

21    whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is

22    engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities,

23    benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

24    If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step

25    two and determines whether the claimant has a medically severe impairment or combination of

26    impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe

27    impairment or combination of impairments, the disability claim is denied.

28    If the impairment is severe, the evaluation proceeds to the third step, which compares the

claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past.  If plaintiff is able to perform his or her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since May 11, 2006, the alleged onset date.  (Tr. 12.)  At step two, he found Plaintiff has the following severe impairments: musculoskeletal impairment with history of thoracic outlet syndrome.  (Tr. 12.)  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 664.)  The ALJ then determined:

[C]laimant has the residual functional capacity to perform light work.  The

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -4

> claimant can lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds. She can sit for six hours and stand or walk for six hours in an eight-hour workday. The claimant has good use of her arms and hands for repetitive grasping, holding, and turning objects. She has slight limitations in concentration and alertness, memory, social interaction, and completing a normal workweek. The claimant should work in a drug and alcohol free workplace.

(Tr. 15-16.) At step four, the ALJ found plaintiff is capable of performing past relevant work as a circulating process inspector. (Tr. 18.) As a result, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, since May 11, 2006 through the date of the decision.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) rejecting consistent opinions from examining physicians by misinterpreting and improperly considering evidence of mental impairments; (2) rejecting plaintiff's testimony without articulating clear and convincing reasons; (3) improperly formulating plaintiff's RFC; and (4) making defective step four findings unsupported by the evidence. (Ct. Rec. 10 at 18-33.) Plaintiff also alleges the ALJ erred by failing to reopen plaintiff's prior application for Title II disability benefits. (Ct. Rec. 10 at 33.) Defendant argues: (1) the ALJ properly evaluated medical source opinions; (2) the ALJ properly assessed plaintiff's credibility; (3) the ALJ properly assessed plaintiff's RFC; and (4) plaintiff did not meet her burden at step four. (Ct. Rec. 14 at 6-14.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ failed to provide legally sufficient justification for rejecting plaintiff's testimony. (Ct. Rec. 10 at 24-27.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) If there is evidence of a medically determinable impairment likely to cause an alleged

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -5

symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346.  The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair*, 885 F.2d at 601.  The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas*, 278 F.3d at 958.

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999).  In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

In this case, the ALJ found that plaintiff's statements at the hearing are generally not credible. (Tr. 13.)  The ALJ cited a number of reasons for the negative credibility finding.  First, the ALJ noted that although plaintiff reports a long history of psychiatric difficulties and has been consistently diagnosed with an adjustment disorder with anxiety, depression, and a personality disorder, she has not received any formal mental health treatment since the alleged date of onset.  (Tr. 13.)  According to the ALJ, this suggests that the claimant does not feel her mental health symptoms are significant. (Tr. 13.)  However, as plaintiff points out, the Ninth Circuit has observed  that depression "is one of the most under-reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  The court agrees that it was not appropriate for the ALJ to consider plaintiff's limited mental health treatment as evidence of a lack of a credibility since the failure to follow

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -6

1   through with mental health treatment may itself be a symptom of significant mental health problems.

2        The ALJ also concluded the record established "clear evidence that the claimant has

3   consciously attempted to portray limitations that are not actually present in order to increase the

4   chance of obtaining benefits." (Tr. 14.)  The ALJ cites the results of a 2004 Personality Assessment

5   Inventory (PAI) test suggesting plaintiff tends to portray herself in an especially negative or

6   pathological manner.  (Tr. 14, 229.)  However, Dr. Rosekrans qualified those findings by noting that

7   her results may indicate a "cry for help" or an extreme or exaggerated negative evaluation of herself

8   and her life.  (Tr. 229.)  This does not constitute "clear evidence" of malingering.  The ALJ also

9   asserted that results of a January 2008 Beck Anxiety Inventory (BAI) test showed plaintiff was

10  malingering or over-reporting.  (Tr. 14, 395.)  The ALJ appears to have misread the statement, "A

11  score above 40 is very likely to be in the range of over-reporting, even for a patient with severe

12  anxiety," as indicative of plaintiff's results.  The report indicates that plaintiff's score on the BAI was

13  31, indicating moderate anxiety.  (Tr. 395.)  The evidence cited by the ALJ does not establish

14  malingering and thus the ALJ erred in asserting evidence of exaggeration of limitations as part of the

15  basis of the credibility finding.

16       Although the foregoing factors were improperly considered by the ALJ in making the

17  credibility determination, the ALJ also gave several of other properly supported reasons which justify

18  the negative credibility finding.  As long as there is substantial evidence supporting the ALJ's

19  conclusions on credibility and an error does not negate the validity of the ALJ's ultimate credibility

20  conclusion, the error is harmless and does not warrant reversal.  *Carmickle v. Comm'r, Soc. Sec.*

21  *Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).   In this case, the ALJ gave two improper reasons for

22  rejecting plaintiff's credibility, but also several other acceptable reasons justifying his credibility

23  determination.

24       Another reason given by the ALJ in rejecting plaintiff's credibility is that plaintiff engages in

25  considerable volunteer and social activities, indicating that plaintiff has no significant limitations in

26  social functioning.  (Tr. 13.)  Activities of daily living are a relevant consideration in making a

27  credibility determination.  *Burch*, 400 F.3d at 681.  "[I]f a claimant is able to spend a substantial part

28  of his day engaged in pursuits involving the performance of physical functions that *are* transferable to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -7

a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989).   The ALJ cited evidence that plaintiff has no difficulty with self-care or activities of daily living, except she gets occasionally gets help with things like taking out the garbage. (Tr. 205, 213-14, 228, 325, 339, 395.)  Plaintiff is able to drive and reported spending time in school studying, volunteering for different organizations, being politically active, painting, writing poetry, decorating, blogging, working and playing on the computer and playing with her pets. (Tr. 205, 339, 349, 395.)  Plaintiff also indicated she has coffee with a friend most mornings. (Tr. 339, 395.)  Plaintiff has volunteered in a mayoral campaign and a mayoral recall effort. (Tr. 214, 234, 265-66.)  She described herself as the "personal assistant" of a mayoral candidate and indicated that the work "keeps her busy pretty much full-time." (Tr. 234.) She made "many connections" in the community working on the recall. (Tr. 265.)  She reported that she had been traveling to Oregon to see her nephews, helping care for her father, and doing an increased amount of yard and garden work. (Tr. 367.)  The ALJ reasonably concluded that plaintiff's political activities suggests extensive interaction with other volunteers and the general public and that her school activities suggest socialization with other students and faculty. (Tr. 14.)  Furthermore, the ALJ also found plaintiff's various activities demonstrate an ability to function socially and show she is able to maintain a busy schedule. (Tr. 14.)  These conclusions are reasonable and based on substantial evidence.

The ALJ also pointed out plaintiff admitted her depression was well controlled with medication on at least one occasion. (Tr. 13.)  Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony.  20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v).  Office visit notes from plaintiff's primary medical provider indicate plaintiff "insisted" her depression is adequately medicated with the current dose of Celexa. (Tr. 254.)

Another factor the ALJ determined reflects negatively on plaintiff's credibility is that there is no indication of cognitive difficulties despite her allegations of significant mental impairments. (Tr. 14, 166.)  The ALJ pointed out plaintiff has been attending college since at least 2004 and has done relatively well in school. (Tr. 227, 348.)  Although she "bombed" in spring quarter of 2004, the ALJ cited evidence that this was likely due to situational stress from her house burning down rather than

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -8

rather than mental health issues.  (Tr. 14, 348, 349.)  By December 2006, plaintiff was involved in school and doing well again.  (Tr. 349.)  Furthermore, the ALJ noted that although plaintiff blamed problems with college algebra on developmental dyslexia and psychogenic amnesia, there is no evidence of diagnosis of either condition other than plaintiff's self-reports.  (Tr. 14, 356-57.)  None of the examining psychologists reported a finding of developmental dyslexia or psychogenic amnesia. In fact, test results show plaintiff has average to high average intellectual functioning, is able to understand directions and work at a reasonable speed, and her verbal and visual memory are intact. (Tr. 166-67.)  The ALJ's conclusion that plaintiff's academic success and cognitive test results are not consistent with her allegations of mental disability is reasonable and supported by the evidence.

The ALJ provided clear and convincing reasons supported by substantial evidence in making a negative credibility finding.  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).   The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Although the ALJ considered two improper factors in the credibility finding, the error is harmless because the ALJ cited several other legitimate credibility considerations supporting the finding and constituting clear and convincing evidence.

**2.      Psychological Opinions**

Plaintiff argues the ALJ improperly rejected the opinions of the DSHS examining psychologists.  (Ct. Rec. 10 at 18-23.)  In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining  physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -9

examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995);  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion.  *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

In this case, the record contains a psychological evaluation and a completed Psychological/Psychiatric evaluation form from a DSHS examining psychologist for every year from 2003 to 2008.   At the outset, it is noted that the evaluations from Psychological Services Spokane from August 2003, December 2004, September 2005, March 2006, and February 2007 were signed by individuals with an MS credential and by Dr. Frank Rosekrans, who specifically adopted the accuracy, objectivity, validity, findings and conclusions of the reports and took responsibility for their contents.  (Tr. 203-17, 222-39, 337-44.)  Defendant argues the reports are entitled to less weight as

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -10

"other source" opinions since they were presumably not prepared by an acceptable medical source.[1] (Ct. Rec. 14 at 12)  The court concludes Dr. Rosekrans' adoption of the reports as his own opinion means the reports constitute the opinion of an examining psychologist.   A January 2008 report from Magnolia Assessments and Mental Health is signed by Kathy Jamieson-Turner, MS.  Dr. Scott Mabee also signed the report, but noted only that he had reviewed the report and believed it to meet the professional standards for psychological evaluations.  (Tr. 393-401.)  Although Dr. Mabee deemed the report to meet standards for psychological evaluations, it is not clear that he adopted the findings and conclusions of the report as his own opinion.  The court need not determine whether the Magnolia Assessments report is the opinion of a psychologist or an "other source" because the ALJ gave the same reasons for rejecting all of the DSHS reports.  If the reasons for rejecting Dr. Rosecrans' reports are specific, legitimate reasons for rejecting the reports, then they should also meet the lesser standard of "germane" for rejecting other source opinions.[2]

The 2003 DSHS report included diagnoses of adjustment disorder with anxiety and depressed mood, personality disorder not otherwise specified (NOS) with borderline and paranoid features

---

[1]In a disability proceeding, the ALJ must consider the opinions of acceptable medical sources. 20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96-2p; S.S.R. 96-6p.  Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. §§ 404.1513(a), 416.913(a).  In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).  In evaluating the evidence, the ALJ should give more weight to the opinion of an acceptable medical source than that of an "other source."  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  An ALJ must give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

[2]For clarity, the court references the DSHS opinions as the opinions of Dr. Rosecrans and Dr. Mabee.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -11

(2003, Tr. 235), while the reports from 2004-2008 all contained diagnoses of undifferentiated somatoform disorder, posttraumatic stress disorder, and personality disorder NOS with borderline features. (Tr. 205-06, 216-17, 232-33, 339-40, 396.) The DSHS Psychological/Psychiatric Evaluation forms for the years 2003, 2004 and 2005 contained moderate limitations in one or two cognitive areas and in two to four social categories. (Tr. 220[3], 224, 238.) The 2004 evaluation also included two marked limitations in the ability to interact appropriately in public contacts and the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 224.) The evaluations for 2006, 2007 and 2008 included no cognitive limitations and moderate limitations in all social categories, including limitations in the ability to relate appropriately to co-workers and supervisors, the ability to interact appropriately in public contacts, the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, the ability to care for self including personal hygiene and appearance, and the ability to control physical or motor movements and maintain appropriate behavior. (Tr. 209, 343, 400.) These opinions are contradicted by the opinion of the state reviewing psychologist, Dr. Beaty, who concluded plaintiff's only functional limitations are mild difficulties in maintaining social functioning. (Tr. 318.) Because the opinions of Dr. Rosekrans and Dr. Mabee are contradicted, the ALJ was required to provide specific, legitimate reasons for rejecting them.

The ALJ gave four reasons for rejecting the DSHS psychological opinions. (Tr. 15.) First, the ALJ noted that plaintiff's activities show she has no more than mild limitations in social functioning. (Tr. 15.) The ALJ may consider that limitations assessed by a physician are inconsistent with the claimant's level of activity in rejecting the opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). As discussed above in detail, *supra*, plaintiff has coffee with a friend almost daily, goes to school, is politically active, has worked on a political campaign, and scheduled an internship. The ALJ cited the opinion of the state

---

[3]The Psychological/Psychiatrict Evaluation form at pages 218-221 of the transcript is dated 12/28/04, but lists an examination date of 9/19/05. (Tr. 221.) This is apparently the 2005 evaluation, as the narrative report for 2005 is dated 9/19/05, as well. (Tr. 211.)

consulting psychologist, who, opined that plaintiff's personality disorder is likely to cause problems in her close personal relationships, but her volunteer work and political activities indicate that her social limitations are no more than mild. (Tr. 314, 20.) The ALJ reasonably concluded that plaintiff's activities are inconsistent with the social limitations assessed by Drs. Rosekrans and Mabee.[4]

Second, the ALJ pointed to plaintiff's cognitive abilities as evidence that she is not as limited as alleged. (Tr. 15.) Plaintiff's ability to attend and progress in college suggests at least average cognitive abilities, as do the results of objective cognitive testing. (Tr. 15, 213, 228, 234.) A discrepancy between a doctor's observations and opinions about a claimant's activities and limitations assessed constitutes a clear and convincing reason for not relying the doctor's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The essentially normal results of plaintiff's cognitive testing and Dr. Rosekrans' notes about her activities are inconsistent with the cognitive limitations assessed by Dr. Rosekrans in 2003, 2004 and 2005. The ALJ properly considered this inconsistency in rejecting the opinions.

Third, the ALJ pointed to notes indicating that plaintiff is not willing to work while she is in school. (Tr. 15.) The psychological assessments in 2007 and 2008 both indicate, "Rita is still the only one that will decide if and when she is able to work and presently she is still attending school and would not be willing to attempt both work and school." (Tr. 340, 397.) A claimant is entitled to benefits only if she is disabled and unable to work. 42 U.S.C. § 423(d)(1)(A). The burden is on the plaintiff to establish that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A); *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976); *Hoffman v. Heckler*, 785 F.2d 1423, 1424 (9th Cir. 1986). The assertion that plaintiff is the only one who will decide if and when she is able to work suggests that plaintiff's allegedly disabling symptoms are within her control. Furthermore, the statement that plaintiff is

---

[4]It is noted that despite two moderate social limitations and a marked limitation in the ability to respond appropriately to the pressures and expectations of the workplace assessed by Dr. Rosekrans in 2003, Dr. Rosekrans also reported that plaintiff "is currently working full-time as a volunteer and it is hard to justify her not being able to find employment." (Tr. 235.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -13

unwilling to work while she is going to school is inconsistent with the conclusion that plaintiff's psychological impairments prevent her from working and undermines limitations assessed by Dr. Rosekrans and Dr. Mabee. The ALJ properly considered the statements implying plaintiff chooses not to work in rejecting the DSHS opinions.

The ALJ also asserted that the evidence clearly indicates plaintiff exaggerated her symptoms to obtain benefits. As discussed above, the ALJ's assessment of the evidence on this issue is erroneous. However, the error is harmless because the ALJ cited other legally valid specific, legitimate reasons supported by substantial evidence for rejecting the DSHS opinion. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Here, the inconsistencies between the limitations assessed by the Dr. Rosekrans and Dr. Mabee and plaintiff's activities, cognitive abilities and her decision not to work while going to school constitute specific, legitimate reasons justifying rejection of the opinions. The ALJ's interpretation of the evidence is reasonable and supported by substantial evidence.

**3.    Residual Functional Capacity**

Plaintiff argues the ALJ improperly applied social security rules in formulating plaintiff's residual functional capacity (RFC). (Ct. Rec. 10 at 27-31.) The ALJ must examine a claimant's RFC and the physical and mental demands of the claimant's past relevant work at step four of the sequential process. 20 C.F.R. § 404.1520(e). RFC is what an individual can still do despite his or her limitations. S.S.R. 96-8p. Regulations require the ALJ to undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. 20 C.F.R. §§ 404.1545 and 416.945

Plaintiff argues the RFC determination is insufficient because the ALJ failed to consider all of plaintiff's impairments, even those that are not severe. (Ct. Rec. 10 at 28.) "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -14

even those that are not 'severe.'" S.S.R. 96-8p.  The ALJ noted that in forming the RFC, he

considered the minimal limitations imposed by plaintiff's medically determinable but non-severe

mental health impairments.  (Tr. 15.)  However,  plaintiff argues the "slight limitations in

concentration and alertness, memory, social interaction, and completing a normal workweek"

included in the RFC do not adequately account for plaintiff's mental limitations.  (Ct. Rec. 10 at 28.)

Plaintiff relies on the diagnoses and reports of Drs. Rosekrans and Mabee in asserting greater mental

limitations, but those reports and diagnoses were properly rejected by the ALJ, as discussed *supra*.

An ALJ is not required to prepare function-by-function analysis for conditions the ALJ finds neither

credible nor supported by the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  The

ALJ adequately addressed the limitations supported by the record in assessing the RFC by finding

slight limitations in certain nonexertional areas.[5]

 Plaintiff also asserts the ALJ did not consider the impact of Ehlers-Danlos syndrome.  (Ct.

Rec. 10 at 29.)  However, the ALJ did consider the Ehlers-Danlos evidence.  He noted that there is no

objective evidence of the Ehlers-Danlos diagnosis and that the documented symptoms are based

solely on plaintiff's reports.  (Tr. 17.)  The primary evidence of Ehlers-Danlos comes from Bill

Lawson PA-C, who indicated that there was no data on how the condition was diagnosed and the only

evidence of diagnosis was plaintiff's verbal history.  (Tr. 17, 263.)  Mr. Lawson noted, "I am unable

to determine whether she actually has EDS versus a benign hypermobility syndrome."  (Tr. 263.)

Furthermore, even taking possible EDS into account, Mr. Lawson indicated plaintiff was capable of

---

 [5]Plaintiff argues the ALJ was "required" by S.S.R. 85-15 to address plaintiff's reaction to stress.

S.S.R. 85-15 applies to cases involving only allegations of nonexertional limitations. *Sandgathe v.

Chater*, 108 F.3d 978, 981 (9th Cir. 1997); *Roberts v. Shalala*, 66 F.3d 179, 183 (1995). Plaintiff alleges

Ehlers Danlos syndrome and other musculoskeletal complaints involving limitations in sitting, standing,

and other exertional limitations, so S.S.R. 85-10 does not apply. *See* S.S.R. 83-10.  Furthermore, the ALJ

commented that plaintiff's numerous activities volunteering and going to school indicate her ability to

handle a "busy and stressful" schedule. (Tr. 14.)  The ALJ adequately addressed plaintiff's abilities with

respect to stress and his conclusion is supported by the evidence.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -15

light work.  (Tr. 269.)  The examining physician, Dr. Bray, took plaintiff's complaints of Ehlers-Danlos syndrome into account, and even after noting greater than normal flexibility in plaintiff's joints, described limitations consistent with the RFC finding.  (Tr. 18, 326-28.)  Dr. Platter, the consulting physician whose opinion was given significant weight by the ALJ, noted EDS "with little actual impairment."  (Tr. 18, 336.)  Thus, the ALJ adequately considered the Ehlers-Danlos evidence.[6]

The ALJ also listed other evidence supporting the RFC finding of light work.  (Tr. 17-18.)  He noted that plaintiff has received only conservative treatment for allegedly disabling impairments and that plaintiff has not sought or received treatment from a specialist during the period at issue.  (Tr. 17.)  The ALJ again pointed out that plaintiff's activities are not as limited as would be expected given the complaints of disabling symptoms and limitations.  (Tr. 17.)  Plaintiff had an internship scheduled to commence in fall 2008, indicating plaintiff is capable of working.  (Tr. 18, 396.)  Additionally, an examining physician, Dr. Bray, concluded plaintiff has no physical restrictions inconsistent with the RFC.  (Tr. 18, 327-28.)  The state consulting physician, Dr. Platter, also concluded plaintiff is limited to light exertion work with no additional limitations.  (Tr. 18, 336.)  As a result, the court concludes the ALJ properly considered all of plaintiff's exertional and nonexertional limitations and the RFC finding is consistent with and supported by substantial evidence.

4.    **Step Four**

Plaintiff argues the step four findings are deficient and unsupported by the evidence.  (Ct. Rec. 10 at 31-33.)  At step four, the ALJ considers plaintiff's ability to return to past relevant work.  20

---

[6]Plaintiff also asserts, "[I]f the ALJ had any questions about [t]his impairment, he could have ordered a consultative exam to assess this impairment pursuant to his duty to develop the record.  (Ct. Rec. 10 at 30.)  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The record was adequate for the ALJ to make a finding regarding plaintiff's reported Ehlers-Danlos syndrome and the ALJ did not err.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -16

C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A plaintiff is not disabled when she can perform:

1.        The actual functional demands and job duties of a particular past relevant job; or

2.        The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); S.S.R. 82-61.  Past relevant work is work that was done in the last fifteen years, lasted long enough for the claimant to learn it, and was substantial gainful activity.  20 C.F.R. § 404.150(b)(1).  The ALJ determined that plaintiff's past work as a circulating process inspector met all of the criteria for  "past relevant work."  (Tr. 18.)

        Plaintiff asserts the circulating process inspector work does not  constitute past relevant work because plaintiff did not work at the job long enough to learn the position.  (Ct. Rec. 10 at 32.)  "Duration refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work" S.S.R. 82-62.  The DOT lists a specific vocational preparation (SVP)  time for each described occupation, which is the amount of time a typical worker needs to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job situation.  DICTIONARY OF OCCUPATIONAL TITLES, Appendix C II (4th Ed.).  The circulating process inspector position is identified as having an SVP of 6 by the vocational expert and the DOT.  (Tr. 140, DOT 829.361-018.)   An SVP of 6 corresponds to "over 1 year and up to and including 2 years" of preparation. DOT, Appendix C II.   Plaintiff testified she worked at the circulating process inspector position for six months in 2001.[7] (Tr. 34-35.)  Thus, plaintiff argues the circulating process inspector position is not past relevant work because she did not work long enough to learn the job according to the SVP found in the DOT.

        As defendant suggests, there is a conflict in the evidence about plaintiff's employment as a circulating process inspector at Honeywell.  (Ct. Rec. 14 at 26.)  An unsigned, undated Work History

---

        [7]It is noted that plaintiff's testimony that she worked at Honeywell in the circulating process inspector position for six months occurred before the vocational expert appeared at the hearing. (Tr. 35.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS -17

Report identifies plaintiff's work as an inspector at Honeywell as occurring during the period of

2/2000 to 3/2001, a period of 13 months which is within the SVP for that position.  (Tr. 87.)  Another

Work History Report signed by plaintiff in August 2006 indicates she worked at Honeywell from

2000 to 2000.  (Tr. 102.)  March 2006, February 2007, and January 2008 psychological reports each

state, "[Claimant] reports that she worked at Honeywell in inspection for 1 year and left in 2000

because of panic attacks."  (Tr. 204, 337, 394.)  Plaintiff's earnings record for the years 2000 and

2001 reflect earnings of $4,175 and $9,109, respectively.  (Tr. 70.)  Although plaintiff relies on her

testimony regarding duration of her employment at Honeywell, the ALJ found her statements at the

hearing to be generally not credible.  (Tr. 13.)

The ALJ is charged with resolving conflicts and ambiguities in the evidence.  *See Morgan v.*

*Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999); *see also Sprague v. Bowen*, 812 F.2d 1226,

1229-30 (9th Cir. 1987).   The court may make reasonable inferences from the ALJ's discussion of the

evidence, if the inferences are there to be drawn.  *Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir.

1989)*.*  The burden of proof lies with the Plaintiff at step four, but the ALJ still has a duty to make the

requisite factual findings to support his conclusions.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir.

2001); S.S.R. 82-62.  In this case, record is unclear as to whether plaintiff's work as an inspector at

Honeywell constitutes past relevant work.  The ALJ did not discuss the evidence at step four with

specificity, except to report the vocational expert's findings.  Since the evidence regarding past

relevant work is ambiguous and the ALJ did not explain the basis for his findings, the step four

finding is inadequate.[8]  As such, the matter should be remanded for additional findings at step four.

On remand, the ALJ should reevaluate the past relevant work determination and make appropriate

findings supported by the record.  Additionally, the ALJ should reevaluate the remainder of the step

four findings to ensure compliance with applicable regulations and rulings, including the functional

---

[8]Defendant urges the court to modify the ALJ's decision and find that plaintiff could perform past

relevant work as an inspector as performed.  (Ct. Rec. 14 at 26.)  However, it is the ALJ's duty to resolve

conflicts and ambiguities in the medical and non-medical evidence.  *See Morgan v. Commissioner*, 169

F.3d 595, 599-600 (9th Cir. 1999).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -18

analysis of the mental and physical requirements of the prior job and resolution of any inconsistencies between the VE's testimony and the DOT.

**5.    Motion to Reopen**

At the hearing, plaintiff moved to reopen her prior application for Title II disability benefits before her date last insured. (Tr. 23, 44.)   The regulations provide, in relevant part, that a determination or decision may be reopened within four years of the date of the initial determination "if we find good cause." 20 C.F.R. § 404.988(b).  "Good cause" is established when "new and material evidence is furnished."  20 C.F.R. § 404.989(a)(1).  The ALJ ruled,  "The determination on the claimant's prior Title II application is not being reopened and revised because good cause is not established.  New and material evidence has not been submitted and the evidence that was considered in making the decision does not clearly show on its face that an error was made." (Tr. 10.)  Plaintiff argues that numerous medical reports dated after the prior DIB application date were submitted in this matter, and that the ALJ erred in finding good cause was not established.

The record contains little evidence about the prior DIB application.  The ALJ asserted the date of the prior DIB application was August 31, 2004, with an initial denial of February 14, 2005, although the source of this information is unclear.  (Tr. 44.)  A field office disability report indicates a prior DIB application was initially denied on March 1, 2001 and denied on reconsideration on September 13, 2005.  (Tr. 99-100.)  Thus, the date of initial denial of the DIB application is unclear. If the ALJ is correct and the initial denial was February 14, 2005, the motion to reopen was made within four years of the initial denial and good cause may be established by submitting new and material evidence.  On remand, the ALJ should review the ruling on plaintiff's motion to reopen the prior DIB claim, and if appropriate, develop the finding that evidence submitted in this matter is not new and material to the prior DIB claim.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error.  A remand for further proceedings is appropriate to make an adequate step four finding.  Additional testimony from the vocational expert may be required.  Additionally, on remand the ALJ should reevaluate his findings on the motion to reopen plaintiff's prior DIB claim and make a determination consistent with

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -19

the evidence and applicable authority.

Accordingly,

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 9)** is **GRANTED**.  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.       Defendant's Motion for Summary Judgment **(Ct. Rec. 13 )** is **DENIED**.

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED February 5, 2010.


                                        S/ JAMES P. HUTTON
_____UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS -20